[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISQUALIFY COUNSEL
Cross-claim defendants Samuel Kofkoff, Robert Kofkoff, Joseph L. Fortin, Colchester Foods, Inc., Kofkoff Egg Farms Limited Partnership, and Fitchville Realty, Inc. (collectively, "Kofkoff entities") have moved to disqualify the law firm of Pepe Hazard, LLP ("Pepe Hazard") from representing defendants Julius Rytman, Dora Rytman, Colchester Egg Farms, Inc., Rytman Grain, Inc., Julius Rytman Proprietorship, Dora Rytman Proprietorship, Pinecrest Duck Farm Trust and Agri-Finance, Inc. (collectively, "Rytman entities") in the above-captioned case. The movants allege that Pepe Hazard represented Kofkoff Feed, Inc. in two lawsuits filed in 1992, and that as a result of this representation, Pepe Hazard "acquired confidential business information material to issues in this case, and had privileged discussions about the Kofkoffs' litigation strategy and evaluation of this case" and is therefore disqualified from representing adverse parties in the instant matter. The movants assert that Pepe Hazard's representation of the Rytman entities would violate Rules 1.9(1) and 1.9(2) of Connecticut's Rules of Professional Conduct.
Cross-claim defendants Brown, Jacobson, Jewett Laudone, Milton L. Jacobson, and Glenn M. Gordon and the law firm with which he is affiliated, Fitzgerald, Gordon, Chinigo, Leone, Maruzo Basilica, LLP, (collectively, "law firms") also moved to disqualify the law firm of Pepe Hazard, LLP from representing the Rytman entities. This court denied that motion on the record in open court after an evidentiary hearing regarding both motions on March 30, 2001.
Standard of adjudication
The party moving to disqualify counsel bears the burden of proof that there are grounds for disqualification. Government of India v. CookIndustries, Inc., 569 F.2d 737, 739 (2d Cir. 1978); Brand v. Matheny, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 0389922 (Feb. 14, 1994) (Aurigemma, J.); Cooney Bainer,P.C. v. Milum, Superior Court, judicial district of New Haven at Meriden, Docket No. 0246558 (June 20, 1995) (Silbert, J.); TropicalSuntan Centers, Inc. v. Salvati, Superior Court, judicial district of New Haven, Docket No. 031092 (Apr. 12, 1990), 1 Conn.L.Rptr. 497, 498 (Meadow, J.); Munk v. Goldome National Corp., 697 F. Sup. 784, 787
CT Page 6978 (S.D.N.Y. 1988).
The trial court has authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys.Bergeron v. Mackler, 225 Conn. 391, 397 (1993). "A conflict of interest based on a prior attorney-client relationship exists only if the moving party establishes that the attorney has since accepted employment that is `adverse to the interests of a former client on a matter substantially related to the prior litigation.'" Fiddelman v. Redmon, 31 Conn. App. 201,210, cert. denied, 226 Conn. 915 (1993), quoting State v. Bunkley,202 Conn. 629, 652 (1987). "The trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification of an attorney." Bergeron v. Mackler, supra,225 Conn. 397.
The Connecticut Supreme Court has ruled that in deciding a motion for disqualification, the court "must be solicitous of a client's right freely to choose his counsel . . . mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel." Bergeron v. Mackler, supra, 225 Conn. 397-98;Government of India v. Cook Industries, Inc., supra, 569 F.2d 739.
The Court stated in Bergeron v. Mackler, supra, 189 Conn. 507, that "the competing interests at stake in the motion to disqualify, therefore, are: (1) the defendant's interest in protecting confidential information; (2) the plaintiffs' interest in freely selecting counsel of their choice; and (3) the public's interest in the scrupulous administration of justice. Goldenberg v. Corporate Air, Inc.,189 Conn. 504, 507 (1983), overruled in part, Burger Burger, Inc. v.Murren, 202 Conn. 660 (1987)."
In Government of India v. Cook Industries, Inc., supra, 569 F.2d 739, the Court of Appeals for the Second Circuit stated that "there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel — a right which of course must be balanced against the need to maintain the highest standard of the profession." (Citations omitted.)
The rules of professional conduct cited by the movants as grounds for disqualification of plaintiffs' counsel are Rules 1.9(1) and (2). The text of these rules is as follows:
 Rule 1.9 Conflict of Interest: Former Client CT Page 6979
 A lawyer who has formerly represented a client in a matter shall not thereafter:
 (1) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
 (2) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
In Bergeron v. Mackler, supra, the Connecticut Supreme Court noted that the test of whether the prior matter was "substantially related" to the present matter "has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and present cases is `patently clear' or when the issues are `identical' or `essentially the same.' Government of India v.Cook Industries, Inc., supra, [569 F.2d] 739-40." Bergeron v. Mackler, supra, 225 Conn. 399.
The provisions of Rule 1.9 are meant to protect a former client from the risk that its prior confidences will be divulged in the services of a later adversary. If the issues are substantially the same, the inference is that confidences may be used, even inadvertently, because of counsel's familiarity with the former client's situation with regard to those very issues. In the case of substantially similar issues, it is not necessary to prove the existence of confidential communications, since the similarity of the issues in and of itself suggests that such communications occurred, without a need to identify specific confidences. Where the issues in the past and the present representation are not substantially similar, however, disqualification is warranted only if the former client establishes conveyance to the lawyer of actual information that could be used against it in the present matter in violation of Rule 1.9(2).
Courts have recognized that acquisition of information from a former client that is vitally related to the subject matter of the pending litigation is also a reason for disqualification. Trone v. Smith,621 F.2d 994, 1000 (9th Cir. 1980).
The defendants do not dispute that where one attorney in a law firm is disqualified, the firm is disqualified. See Government of India v. CookIndustries, Inc., supra, 569 F.2d 740. CT Page 6980
Findings of fact
On the basis of the materials submitted at the hearing conducted by the court, the court finds the facts to be as follows.
David Rosengren, a lawyer at Pepe Hazard, filed an appearance in this case, which has been pending since 1987, on behalf of the Rytman entities on January 19, 2001, after the withdrawal of the appearance of other counsel. The claims of the plaintiff bank have been resolved; however, the cross-claims of the Rytman entities against the movants are still pending, as are the movants' counterclaims against the Rytman entities.
Beginning in 1992, Ann Bird, a lawyer at Pepe Hazard represented a producer of chicken feed known as Kofkoff Feed, Inc. ("Kofkoff Feed) in a suit brought against it by Kofkoff Egg Farm Limited Partnership ("Kofkoff Egg"). Kofkoff Egg claimed that its chickens had been adversely affected because feed it bought from Kofkoff Feed and that Kofkoff Feed prepared from ingredients supplied by some co-defendants in that suit contained insufficient lecithin. Attorney Thomas Rechen, another lawyer at Pepe 
Hazard, worked with Attorney Bird on the matter and took over representation of Kofkoff Feed from Attorney Bird.
Kofkoff Egg's suit against Kofkoff Feed was resolved in 1998.
No attorney at Pepe Hazard was proven to have ever represented Kofkoff Egg or any of the other Kofkoff entities that are parties to the present action at any time. Kofkoff Feed is not a party in the instant action.
In the course of representing Kofkoff Feed, Attorney Rechen received discovery compliance from the plaintiff in that case, Kofkoff Egg. He also received background information as counsel for Kofkoff Feed concerning the operations of Kofkoff Egg when co-defendants asserted that defects in the feed or its ingredients were not the cause of Kofkoff's Egg's losses, but that its own mismanagement was. Attorney Rechen inspected some records concerning the Rytmans' egg business because co-defendants took the position that chickens owned by the Rytmans had eaten the same feed and had not become sick.
Joseph H. Fortin, Samuel Kofkoff and Robert Kofkoff are the officers of all of the Kofkoff entities, and Kofkoff Feed. Fortin testified that Kofkoff Feed is not a subsidiary of Kotkoff Egg, which is a limited partnership, not a corporation. One of the employees of Kofkoff Feed who assisted Attorney Rechen in analyzing documents in the "Kofkoff Egg v. Kofkoff Feed" case was Hugh Mathews, who also performed some work for CT Page 6981 Kofkoff Egg, even though his salary was paid by Kofkoff Feed. On behalf of Kofkoff Egg, Matthews assembled compliance with the discovery request of Kofkoff Egg and the other defendants, and then, as an employee of Kofkoff Egg, he discussed the compliance with Attorney Rechen.
Mr. Matthews showed Mr. Rechen some documents that the Rytmans had supplied to Kofkoff Egg in discovery in the cases brought against Kofkoff Egg by the Rytmans. Kofkoff Egg hired a Mr. Bell to prepare its estimate of damages, and Mr. Bell met with Attorney Rechen to explain his estimate, without counsel for Kofkoff Egg being present. Mr. Fortin had a conversation with Attorney Rechen in which he described to the attorney changes that had been made in operations and facilties that the Kofkoff entities had acquried from the Rytmans. Mr. Fortin expressed his opinion that the instant litigation by the Rytmans was "a joke." He also told Attorney Rechen his opinion about why the Rytmans had gone out of business.
No evidence was produced to establish that Pepe Hazard, Attorney Bird or Attorney Rechen was ever engaged to perform legal services for any of the movants.
Discussion
In order to prove that disqualification is warranted under either subpart of Rule 1.9, the movants must show that Pepe Hazard or any of its lawyers "formerly represented [them] as a client in a matter . . ." Actually, Pepe Hazard and Attorneys Bird and Rechen of that firm represented Kofkoff Feed, Inc., a separate corporation that is not a party in this case. Kofkoff Egg Farms Limited Partnership was an adverse party in the suit in which Pepe Hazard represented Kofkoff Feed. Acquisition of documents filed in response to discovery requests by the defendants in that action did not constitute access by Pepe Hazard to a client's information, but only to an adversary's information. The casual sharing of employees and the overlapping of management personnel in the Kofkoff Egg and Kofkoff Feed operations did not make Kofkoff Egg a client of Attorney Rechen and his firm. In some cases in which closely related entities share an interest in the litigation in which counsel has represented one of such parties, courts have considered the allied entities to have been represented by that counsel in a "vicarious" or "attentuated" relationship but have ordered disqualification only if the issues involved in the prior matter were "identical" or "substantially the same" as the issues in the present matter. Government of India v.Cook Industries, Inc., supra, 569 F.2d 739-40; and Chemical Bank v.Affiliated FM Ins. Co., 1994 W.L. 141951 (S.D.N.Y.) at p. 3.
It is a contortion to say that in representing Kofkoff Feed as CT Page 6982 defendant in a claim brought by Kofkoff Egg as plaintiff, Pepe Hazard was actually counsel to the plaintiff. Though the movants have cited cases involving representation of a parent company and subsequent litigation on behalf of a third party against a subsidiary, or vice versa, in none of those cases was representation of one considered to be vicarious representation of the other in a circumstance in which the parent and subsidiary had been adverse parties. The movants' explanation that the "real" purpose of the Kofkoff Egg v. Kofkoff Feed suit was to unite against other defendants, though perhaps a noteworthy identification of collusive conduct, does not persuade this court that counsel for the defendant should be viewed as counsel for the plaintiff. Joseph Fortin admitted that Attorney Rechen had discouraged efforts by Kofkoff Egg to disregard the separate interests and representation of Kofkoff Egg and Kofkoff Feed in the case in which Attorney Rechen represented Kofkoff Feed. Fortin testified that he had been unhappy that Attorney Rechen had told Hugh Matthews, an employee of Kofkoff Feed, not to discuss its strategy with representatives of Kofkoff Egg. The court declines to adopt the Alice-in-Wonderland premise that counsel for the defendant in the Kofkoff Egg v. Feed case was really counsel for the plaintiff, and at any rate, the standard applicable to vicarious clients is not met.
The issues in the Kofkoff Egg v. Kofkoff Feed litigation, which have been described above, moreover, were neither identical nor substantially the same as the claims brought by the Rytmans in this case. Discussion of the Rytmans' operations in the course of calculating damages does not meet the applicable standard of identity of issues.
The movants have likewise not proven that Attorney Rechen received any confidential information from them in the course of any representation of Kofkoff Egg. The information that was provided to Attorney Rechen was provided to him as counsel for Kofkoff Feed, not as counsel for Kofkoff Egg. Rule 1.9(2) protects information "relating to the representation" of a former client, not information received from an adverse party, whether formally or informally. The movants seek to disqualification on grounds to which neither Rule 1.9(1) nor Rule 1.9(2) apply.
The plaintiffs are in the precarious situation of having had counsel withdraw after over a decade of litigation, and they have an interest in not losing the counsel they have secured to take on the enormously voluminous files at a time when the cases are beginning active management on this docket. Their choice of counsel is an important factor to be considered. Bergeron v. Mackler, supra, 225 Conn. 397; and Rule 1.9 cannot be extended beyond its actual provisions in the manner suggested by the movants to deprive the Rytman entities of their choice of counsel. CT Page 6983
Conclusion
The motion to disqualify is denied.
Beverly J. Hodgson Judge of the Superior Court